**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROMEO MORGAN,

      Plaintiff,

  v.

JAIME RAGAN,
USDA FNS SNAP

      Defendant.

Civil Action No. 14-684 (CKK)

**MEMORANDUM OPINION**
(June 4, 2014)

Plaintiff Romeo Morgan has filed suit against Defendants Jaime Ragan and the U.S. Department of Agriculture, Food and Nutrition Service, Supplemental Nutrition Assistance Program, seeking review of the FNS's Final Agency Decision sustaining a decision by FNS Retailer Operations to withdraw the authorization of Morgan's Seafood, owned by Plaintiff, to participate as a retailer in the Supplemental Nutrition Assistance Program. Presently before the Court is Plaintiff's [2] Motion for an Emergency Stay, which seeks to stay this withdrawal. Upon consideration of the pleadings[1], the relevant legal authorities, and the record at this point in the proceedings, the Court finds that Plaintiff is unlikely to succeed on the merits of his claim and has not made a sufficient showing of irreparable harm in the absence of a stay. Given these considerations, the Court finds that the stay sought by Plaintiff is not warranted at this time and Plaintiffs' motion is DENIED.

---

[1] Compl., ECF No. [1]; Pl.'s Mot. for Emergency Stay, ECF No. [2] ("Pl.'s Mot."); Admin. Record, ECF No. [8] ("AR"); Defs.' Opp'n. to Pl.'s Mot. for Emergency Stay of Administrative Action, ECF No. [9] ("Defs.' Opp'n"); Pl.'s Ans. to Defs.' Opp'n to Pl.'s Mot., ECF No. [12] ("Pl.'s Reply").

# I. BACKGROUND

## A. Statutory Background

Congress created the food stamp program in 1964 to "permit those households with low incomes to receive a greater share of the Nation's food abundance." The Food Stamp Act of 1964, Pub. L. No. 88-525, § 2, 78 Stat. 703, 703. "Retail stores authorized to participate in the program may accept food stamp benefits instead of cash for designated food items." *Affum v. United States*, 566 F.3d 1150, 1153 (D.C. Cir. 2009) (citing 7 U.S.C. § 2013(a).). "The stores then redeem these benefits with the government for face value." *Id.* In 2008, Congress amended the Food Stamp Act, renaming it the Food and Nutrition Act and renaming the "food stamp program" the "supplemental nutrition assistance program" or "SNAP." *Id.*

A business seeking approval as a "retail food store" under SNAP must comply with the requirements of 7 U.S.C. § 2018. This provision authorizes the Secretary of Agriculture to issue regulations governing the approval and reauthorization of retail food stores to participate in the SNAP. 7 U.S.C. § 2018(a)(2). Pursuant to this statutory authority, the Secretary has issued the regulation at issue here, 7 C.F.R. § 278.1. This provision states, in relevant part, that the Food and Nutrition Service of the Department of Agriculture ("FNS"), "shall withdraw the authorization of any firm authorized to participate in the program for any of the following reasons: . . . (iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section . . . ." 7 C.F.R. § 278.1(l)(1).

Criterion A and B are standards governing the variety and quantity of food sold by a particular retailer. In order to meet Criterion A, the store must offer "for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods as defined in § 271.2 of this chapter, including perishable foods in at least two of the categories." *Id.* § 278.1(b)(1)(i)(A). *See also id.* § 278.1(b)(1)(ii) (explaining this definition in greater detail).

Criterion B is satisfied if "more than 50 percent of the total gross retail sales of the establishment or route [are] in staple foods." *Id.* § 278.1(b)(1)(i)(A). *See also id.* § 278.1(b)(1)(iii) (explaining this definition in greater detail). As defined by 7 C.F.R. § 271.2, "[s]taple food means those food items intended for home preparation and consumption in each of the following food categories: meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products." *Id.* § 271.2.

Another provision of 7 C.F.R. § 278.1 sets out "ineligible firms" for participation in the SNAP, and explicitly qualifies Criterion A and B. This provision states:

> Ineligible firms under this paragraph include, but are not limited to, stores selling only accessory foods, including spices, candy, soft drinks, tea, or coffee; ice cream vendors selling solely ice cream; and specialty doughnut shops or bakeries not selling bread. *In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in hot and/or cold prepared foods not intended for home preparation and consumption, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout.* Such firms may qualify, however, under the special restaurant programs that serve the elderly, disabled, and homeless populations, as set forth in paragraph (d) of this section.

*Id.* § 278.1(b)(1)(iv) (emphasis added).

### B. Factual Background

In March 2008, FNS authorized Morgan's Seafood, an unincorporated business in Washington, DC, to participate in the SNAP. AR 1-13. On June 14, 2013, Plaintiff, as the owner of Morgan's Seafood, completed an FNS-252-R reauthorization application in order to continue his participation in the program. AR 51. As part of its review of this application and its assessment of the continued eligibility of Morgan's Seafood to participate in the SNAP, FNS contract review officials conducted two separate store visits of Morgan's Seafood. AR 14-50, 90-116. These visits occurred on November 7, 2013 and January 3, 2014. The November 7, 2013 review identified as issues "empty coolers" and "broken coolers" and provided the following observations:

3

1) Owner stated that his display cooler is broken, forcing him to store most of his seafood in the back coolers. The food used for making hot food was mixed [] with the raw (as-is) seafood but the reviewer asked what is what. Prepared salads are also in the back coolers. The beef/meat/sausage in the storage cooler was for cooking only, per owner.
2) The empty tank in photo #693 is of a tank that was full of lobsters that were stolen by burglars, per owner statement.
3) Prices for the deli are not posted. Owner claims that he recently acquired the cooler and deli products but has not created a price list. The menu did not include sandwiches.
4) The prepared cold salads and the yams are also for sale as-is or by themselves, per owner, if customers choose so. However, the cooked yams are on the menu and salads come as sides to hot dishes.

AR 15. The January 3, 2014 visit also noted "empty coolers" and "broken coolers" and offered the following comments:

> Store did not have prices posted for meat/cheese. Owner stated that alcohol is not for sale, it's for personal use even though it's posted on the menu so I did not mark alcohol on the survey. Sandwiches are made to order.

AR 91. Both reviewers took a number of photographs of the interior of Morgan's Seafood, which have been included in the administrative record. AR 20-50, 96-116.

By letter dated December 10, 2014 (but apparently issued January 10, 2014), the FNS Retailer Operations Branch informed Plaintiff that the authorization of Morgan's Seafood to participate in the SNAP was being withdrawn. AR 119-121. The letter advised Plaintiff that based on the two visits discussed above, FNS had concluded that Plaintiff's business did not meet the eligibility criteria for stores set forth in 7 C.F.R. § 278.1(b)(1). *Id.* The letter stated that "[i]t is the determination of the Food and Nutrition Service that your firm is primarily a Restaurant . . . Your firm does not meet the definition and requirements of a retail food store as set forth in section 271.2 and 278.1(b)(1) of the SNAP regulations because more than 50 percent of your firm's total sales is in hot and/or cold prepared, ready-to-eat foods that are intended for immediate consumption and require no additional preparation." AR 119. Plaintiff requested an

administrative review of the withdrawal action by letter dated January 24, 2014. AR 122. FNS granted this appeal of the Retailer Operations Branch decision, and implementation of the withdrawal of Plaintiff's SNAP authorization was held in abeyance pending completion of the administrative appeal. AR 132.

By letter dated February 10, 2014, Plaintiff provided a written response to the withdrawal determination, stating that the FNS visits to his store "do not present a clear picture of my inventory for three reasons." AR 127.

> The first issue that may have been misleading is the fact that at the time of the visits my display case was not up and running. The display case would normally show a wide variety of seafood. It allows for a visual display of the inventory that is available for retail sale.
>
> The second reason is the unique nature of the seafood business. In order to be able to keep my reputation of providing quality fresh seafood[,] I choose not [to] maintain a large inventory of items that may or may not sell or that are extremely perishable such as Crabs, Shrimp, Oysters and Clams. My inventory must be replenished on a daily basis in order for the product to be acceptable to my customers.
>
> A third issue is the fact that my business is seasonal in nature. The bulk of my sales are in the summer. At the time of the visits it was late fall and the start of the holiday season. A large portion of my retail business comes from the sale of fresh crabs. Not only are they extremely perishable but they are difficult to obtain during the winter. There are times when due to availability I have no inventory of crabs. Even when crabs are available the prices are so high, due to limited supply, that I am unable to make a profit on them.
>
> An additional point for you to consider when evaluating my application is the fact that for many years Morgans Seafood has participated, without issue, in the food stamp program the store has provided its customers with quality, healthy nutritionally beneficial food choices in the inner city. If you were to deny Morgans Seafood from participating in the SNAP program my customers will have an additional financial burden of finding transporta[t]ion to other seafood retail outlets.

*Id.* On March 6, 2014, an FNS Administrative Review Officer issued a Final Agency Decision concluding that there was "sufficient evidence to support a finding that the Retailer Operations

Division . . . properly imposed the withdrawal of the authorization of Morgan's Seafood . . . to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP)." AR 131. After summarizing Plaintiff's objections as stated in his February 10, 2014 letter, the Decision included the following analysis of Plaintiff's appeal and the record compiled by FNS.

> The FNS onsite visit revealed that the establishment presents itself to the public as a restaurant serving hot and cold prepared ready-to-eat foods intended for immediate consumption or takeout requiring no additional preparation. There is a prominent menu board for prepared items, and store signage advertises prepared food items such as soul food, smoked ribs, beef and pork, and seafood meals. The limited food inventory onsite is located behind service counters and in the kitchen area. These foods appear to be used for the preparation of ready-to-eat meals as posted and custom made sandwiches. The restaurant has a countertop for food orders, and customer waiting for prepared orders. There are stools, table tops, and a counter area for eating in. The firm has signage for beer, and alcohol is visible in the photographs. There is a deli case with cheese and luncheon meat, and some prepared pies and cakes in single serve containers. The kitchen and food preparations area and equipment take up most of the space and are representative that this is a restaurant rather than a retail food store. The inventory indicated that there were no prices posted for meat/cheese and that sandwiches are made to order. A Food Establishment Inspection Report by the District of Columbia Department of Health submitted by the retailer indicated that the firm was out of compliance with a number of rating criteria. The tax returns list the business name as Morgan's Seafood and Bar and Grill and the business is described as food and drink service.
>
> The January 3, 2014 inventory conducted by the FNS representative indicated that the business lacked sufficient staple foods and did not meet Criteria A. Retailer Operations determined that Appellant was ineligible for authorization under Criterion B per 7 CFR § 278.1(b)(1)(iii) since staple food sales must comprise more than 50 percent of a firm's annual gross retail sales. More importantly, Retailer Operations determined that not only does this business not meet Criteria A or B for authorization as a retail food store, it does not meet the very definition of a retail food store as set forth in sections 7 CFR § 271.2 and § 278.1(b)(1) cited herein. Retailer Operations determined that the business had more than 50 percent of its total gross retail sales in hot and/or cold prepared, ready-to-eat foods that are intended for immediate consumption onsite or for carry-out, and require no additional preparation, and by definition is not eligible for SNAP participation as retail food store.

AR 134. Based on this determination, the Decision advised Plaintiff that the decision to withdraw authorization for Morgan's Seafood to participate as a retailer in the SNAP was

6

sustained.  AR 135.  Consistent with 7 C.F.R. § 278.1(k)(2), the Decision advised Plaintiff that he was ineligible to reapply for participation in the SNAP for a minimum period of six months from the effective date of withdrawal.[2]  AR 135.

The Decision further advised Plaintiff of 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, the provisions governing judicial review of the denial of his appeal.  *Id.*  The Decision stated, "if a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner(s) reside or are engaged in business . . . If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision."  *Id.*  Shipping records included in the administrative record indicate that Plaintiff received the Decision on March 10, 2014.  AR 136.

C. **Procedural Background**

Plaintiff filed suit in this Court on April 23, 2014 arguing that "Defendant improperly denied Plaintiff an authorization to participate in the Department of Agriculture's SNAP program [sic] and its decision was arbitrary and improper" as "Plaintiff complied with 7 CFR 278.1(b)(1)(iii) and other CFR provisions."  Compl. ¶¶ 6-7.  The following day, he filed the present Motion for an Emergency Stay, stating that if he remained unable to participate in the SNAP, Morgan's Seafood would be forced out of business.  Pl.'s Mot. at 1.  Plaintiff seeks a stay of the withdrawal of his authorization to participate in the SNAP during the pendency of these proceedings.

On April 29, 2014, the Court held an on-the-record telephonic hearing with Plaintiff and counsel for Defendants.  During this conference call, counsel for Defendants expressed concern that Plaintiff had filed his suit more than thirty days after Plaintiff's receipt of the FNS

---

[2] Because the effective date of withdrawal was held in abeyance pending the resolution of Plaintiff's administrative appeal, AR 132, the Court understands this six-month period to run from March 6, 2014, barring Plaintiff from reapplying until September 6, 2014.

7

Administrative Review Officer's Final Agency Decision. Plaintiff responded that he had actually filed suit within the thirty day time frame but that the Clerk of the Court had rejected his initial complaint due to a filing defect. This Court subsequently conferred with the Clerk of the Court, which provided evidence to support Plaintiff's explanation. *See* Order, ECF No. [15]. Based on the records of the Clerk of the Court, Plaintiff attempted to file an identical complaint on behalf of himself and Morgan's Seafood against the United States (rather than the current Defendants) on April 9, 2014.[3] By Order issued April 14, 2014, Chief Judge Richard W. Roberts returned the Complaint to Plaintiff as deficient, advising Plaintiff that he could not "file papers to represent an entity other than [himself] if [he is] not an active member of the bar of this Court." Abiding by Chief Judge Roberts' instructions, Plaintiff omitted Morgan's Seafood from his revised complaint, which he filed on April 23, 2014.[4]

Following the schedule set out during the April 29, 2014 telephonic hearing and memorialized in the [3] Order issued the same day, Defendants filed the administrative record and the accompanying Declaration of Completeness on May 7, 2014, Defendants filed their Opposition to Plaintiff's Motion for an Emergency Stay on May 9, 2014, and Plaintiff filed his

---

[3] Plaintiff's initial Complaint correctly named the United States as Defendant. By its June 2, 2014 [14] Order, the Court required Plaintiff to file an Amended Complaint by June 16, 2014. This Amended Complaint should also re-caption this case to name the United States as Defendant.

[4] Although Defendants again raise the argument that Plaintiff's Complaint was untimely in their Opposition, this brief was filed without the benefit of the documentation from the Clerk's Office. *See* Defs.' Opp'n at 12 n. 2 ("Defendants understand that Morgan represented on the telephonic conference with Court that he may have correspondence from the Clerk's Office to substantiate his claim that he attempted to file the complaint on April 9, 2014; however, Defendants do not presently have a copy of any such correspondence."). By separate Order issued this day, the Court places the documents received from the Clerk's Office on the docket. *See* Order, ECF No. [15]. Accordingly, the Court considers this argument addressed for purposes of this motion. To the extent Defendants continue to press this argument in spite of this documentation, they may do so in subsequent briefing in this case.

8

Reply in support of the Motion on May 30, 2014. Accordingly, the motion is now ripe for review.[5]

## II. LEGAL STANDARD

Pursuant to 7 U.S.C. § 2023(a)(17), "[d]uring the pendency of . . . judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal."[6]

---

[5] On May 30, 2014, Plaintiff also filed two separate motions, which the Court resolved by its June 2, 2014 [14] Order. First, the Court granted Plaintiff's [11] Motion to Amend Complaint as Plaintiff was entitled to amend his complaint once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). Second, the Court denied without prejudice Plaintiff's [13] Motion to Compel for failure to comply with Local Civil Rule 7(m). As stated in the Court's June 2, 2014 Order, the resolution of these motions has no effect on the disposition of Plaintiff's present [2] Motion for an Emergency Stay.

[6] As noted, on April 29, 2014, the Court held an on-the-record telephonic hearing on Plaintiff's motion. However, it is unclear whether the statute requires such an *oral* hearing. Other district courts to consider stay motions brought pursuant to 7 U.S.C. § 2023(a)(17) have concluded that the statute's use of "hearing" does not mandate an oral hearing before ruling on the motion to stay. *See, e.g., Phany Poeng v. United States*, 167 F.Supp.2d 1136, 1138 (S.D. Cal. 2001) ("The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1)."); *Sheikh's, Inc. v. United States*, No. 10-cv-62004, 2010 WL 5253531, at *3 (S.D. Fla. Dec. 15, 2010) ("the Court will exercise its discretion under Local Rule 7.1(b) to deny Plaintiff's request for a hearing"). In addition, other subsections of 7 U.S.C. § 2023 – in contrast to 7 U.S.C. § 2023(a)(17) – use the more particular phrase "oral hearing." *See* 7 U.S.C. § 2023(a)(10) ("Such summary procedure need not include an *oral hearing*."). The use of the unmodified term "hearing" within the same provision suggests that an oral hearing is not required under 7 U.S.C. § 2023(a)(17). *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citations and quotation marks omitted).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

In assessing Plaintiff's likelihood of prevailing on the merits, the Court looks to the standard applicable in ruling on Plaintiff's claim. Pursuant to 7 U.S.C. § 2023(a)(15), "[t]he suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue . . . ." "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." *Id.* § 2023(a)(16).

" 'A trial de novo is a trial which is not limited to the administrative record – the plaintiff 'may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.'" *Affum*, 566 F.3d at 1160 (quoting *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997)). "The trial *de novo* provision of the Act 'is clearly broader than the review standard provided for under the Administrative Procedure Act. It requires the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence.'" *Id.* (quoting *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). In undertaking this inquiry, the burden of proof is "placed upon the store owner to prove by a preponderance of the evidence that the violations did not occur." *Kim*, 121 F.3d at 1272.

However, although the validity of the underlying violation is reviewed *de novo*, "judicial review of the agency's choice of penalty is focused on whether the Secretary has abused his discretion." *Affum*, 566 F.3d at 1162. *See also id.* at 1160-61 ("considering the statutory scheme as a whole, we think that Congress meant to impose different standards of review for a judicial action challenging the agency's finding of a violation as opposed to a judicial action challenging the Secretary's choice of penalty."); *Lawrence v. United States*, 693 F.2d 274, 276 (2d Cir. 1982)

10

(where plaintiff conceded the fact of the violations, "[t]he sole issue before the District Court . . . was whether the FNS imposition of a one-year suspension as a penalty was arbitrary and capricious"). "Under the applicable standard of review, the Secretary abuses his discretion in his choice of penalty if his decision is either 'unwarranted in law' or 'without justification in fact,' or is 'arbitrary' or 'capricious.'" *Affum*, 556 F.3d at 1161 (internal citations omitted).

Here, Plaintiff has sought an emergency stay, arguing that "his business sufficiently meets all applicable agency regulations." Compl. ¶ 5. Accordingly, because Plaintiff is challenging the existence of a violation here, the Court reviews the FNS conclusion that Plaintiff is not eligible for the SNAP *de novo*.[7] As noted, Plaintiff is not limited to relying on the administrative record in pursuing his claim. However, in his filings, Plaintiff has not provided the Court with any materials outside the administrative record in support of his claim. Rather, he relies on the materials in the administrative record to show that the FNS has wrongfully concluded that Morgan's Seafood is ineligible for participation in the SNAP pursuant to 7 C.F.R. § 278.1(b)(1).

In making this claim, Plaintiff relies primarily on a series of photographs of the interior of Morgan's Seafood which are contained in the administrative record. These photographs, apparently taken by the two FNS reviewers who visited Morgan's Seafood on November 7, 2013

---

[7] Plaintiff does not clearly take issue with Defendants' choice of penalty, and any review of this decision is only for abuse of discretion. To the extent Plaintiff also challenges the choice of his penalty here – withdrawal of eligibility and a six-month bar on reapplication – the Court notes that these penalties are set out in the applicable regulations and their application here does not constitute action that is arbitrary or capricious or "unwarranted in law" or "without justification in fact." *See* 7 C.F.R. § 278.1(l)(1) (FNS shall withdraw the authorization of any firm authorized to participate in the program . . . [if] (iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section"); *id.* at 278.1(k)(2) ("Any firm that has been denied authorization on these bases shall not be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.").

and January 3, 2014, respectively, show a series of food products contained in Plaintiff's store. AR 20-50, 96-116. Plaintiff points to these pictures as evidence that Morgan's Seafood is operating as a "retail establishment" selling fresh seafood, and not as a restaurant. *See* Pl.'s Reply at 2 ("If Mr. Morgan is not operating as a retail establishment what are pictures A.R. 21, A.R. 22, A.R. 23, A.R. 24, A.R. 25, A.R. 26, A.R. 28, A.R. 29, A.R. 31, A.R. 33, A.R. 34, A.R. 36, A.R. 37, A.R. 38, A.R. 39, A.R. 40, A.R. 41, A.R. 42, A.R. 43, A.R. 44, A.R. 45, A.R. 48, A.R. 49, Clearly shows retail items."); *id.* ("Morgan has clearly shown according to their pictures which are listed in #5 which shows unprepared foods in his establishment").

Yet these photographs do not provide the clear evidence Plaintiff hopes. Importantly, Plaintiff does not clarify which of these photographs show items for direct sale to consumers and which, by contrast, show items used in the preparation of meals for carryout. AR 22, AR 32, and AR 39, three of the photographs cited by Plaintiff, show the menu board for Morgan's Seafood. Other photographs in the administrative record also show this menu board from various angles. *See* AR 98, 100, 102, 105, 106, 107, 113, 115, 116. This menu, as noted by the FNS Decision, lists a series of carryout options in the categories "Soul Food", "Sides" and "Dinners" and "Combinations." The menu options in these categories include, among many others, "baked chicken", "rib sandwich", "pork chop", "fried mussels" and "fried okra." AR 113; *see also* AR 134 ("[T]he establishment presents itself to the public as a restaurant serving hot and cold prepared ready-to-eat foods intended for immediate consumption or takeout requiring no additional preparation. There is a prominent menu board for prepared items, and store signage advertises food items such as soul food, smoked ribs, beef and pork, and seafood meals."). The photographs show other indicia of a carryout business, such as condiments and packaging for take-out meals. AR 105. Although the photographs cited by Plaintiff show a series of food

products – including bread, cheese, vegetables, and various seafood – he provides no evidence to show that these are anything but ingredients and inventory used in preparing the meals for customers listed on the menu board. The Court is willing to accept that some of the food items in these photos may be for sale directly to consumers without preparation. Indeed, AR 36 shows several boxes of cereal stacked atop a cooler, apparently for sale to consumers. Moreover, there appears to be no dispute that at least *some* of Plaintiff's business comes from the direct sale of fresh seafood. However, Plaintiff fails to define the scope of his sale of staple foods in comparison to his sale of prepared foods. In light of the menu board and other indicia that Morgan's Seafood operates at least in part as a restaurant, Plaintiff's blanket statement that *all* of the photographs show "retail items" is simply implausible. These photographs do not provide sufficient evidence that Plaintiff complies with Criterion A or B, or that Plaintiff is not a "restaurant" within the meaning of 7 C.F.R. § 278.1(b)(1)(iv). Without further evidence, they do not show that (a) Plaintiff offers *for sale* foods in each of four categories of staple food, including perishable foods in at least two of the categories, or (b) more than 50 percent of Plaintiff's total gross retail sales are in staple foods. *See* 7 C.F.R. § 278.1(b)(1)(i)(A). Furthermore, they do not undermine the conclusion that more than 50 percent of Plaintiff's total gross retail sales are in hot and/or cold prepared foods not intended for home preparation and consumption, rendering him an ineligible restaurant under 7 C.F.R. § 278.1(b)(1)(iv). While additional explanation may render these photographs relevant in applying the standards 7 C.F.R. § 278.1, standing alone, they are insufficient to show a likelihood of success.

Plaintiff's related arguments fail for similar reasons. Plaintiff points to the FNS' reviewers' photographs of his coolers. Because these coolers (which the Court notes are partially empty) appear to contain seafood, Plaintiff contends that he has established his seafood

13

inventory. *See* Pl.'s Reply at 1 ("According to pages A.R. 21, A.R. 24, A.R. 28, A.R. 41, A.R. 43, and A.R. 45, clearly shows refrigeration in working order on all fresh seafood inside are very perishable and would have spoiled, and if the coolers were empty it clearly shows inventory."). Yet, again, the Court has no proof from Plaintiff that these materials, along with the other food products shown in these photographs, were for direct sale to customers, and not simply ingredients used in preparing food for carryout. The Court is thus left guessing as to what percentage of Plaintiff's business comes from sale of staple foods and what percentage comes from sale of carryout meals. In addition, to the extent Plaintiff is arguing that the empty coolers are indicative of his inventory (apparently because he has sold whatever was in the coolers), he goes too far. The Court is unpersuaded, in the absence of additional evidence such as receipts and inventory records, that an empty cooler indicates that Plaintiff has sold out whatever supply of fresh seafood he offered for direct sale to customers on a particular day.

Plaintiff also argues that the FNS reviewers' depiction of his store's layout, contained at AR 19, "clearly does not show any hot food steam table with food ready to be served." Pl.'s Reply at 1; *see also id.* at 2 ("nor does their drawing show on page A.R. 19 of equipment showing consistent hot foods."). The Court is somewhat unclear as to this objection, but notes that the reviewer's sketch of the layout of Morgan's Seafood at AR 19 does say "hot food" in its description of the area behind several coolers in Plaintiff's store. Photographs displaying this area show what appears to be a grill or stove, although not clearly. AR 32, 105. In addition, Plaintiff's 2011 tax return lists business expenses associated with "stoves." AR 56. In any case, if Plaintiff is arguing that he does not actually prepare hot food, as he lacks equipment consistent with preparation of hot food, his argument goes nowhere. First, the menu board depicted in various photographs would appear to directly contradict Plaintiff's claim, as it offers for sale

various items that are typically of the hot food prepared variety, such as "baked chicken", "rib sandwich", "pork chop", "fried mussels" and "fried okra." Second, the definition of "restaurant" in 7 C.F.R. § 278.1 is not limited to firms selling hot prepared foods. *See* 7 C.F.R. § 278.1(b)(1)(iv) ("firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in hot *and/or cold prepared foods* not intended for home preparation and consumption, shall not qualify for participation as retail food stores under Criterion A or B.") (emphasis added).

Plaintiff's remaining arguments are unpersuasive in showing that he meets Criterion A or B or that he is not a "restaurant" pursuant to 7 C.F.R. § 278.1. First, Plaintiff points to a photograph of the exterior of his store, and notes that the signage for the business reads "Morgan's Seafood" and *not* "Morgan's Seafood Restaurant." Pl.'s Reply at 1 (citing AR 20). Yet the mere fact that Plaintiff does not explicitly call his firm a restaurant is not conclusive for purposes of applying the restaurant definition in 7 C.F.R. § 278.1(b)(1)(iv). Moreover, it bears noting, that in his tax returns, Plaintiff *has* held out his business as a restaurant, listing his business name as "Morgan Seafood Bar and Grill." AR 55. Second, as an additional argument for the stay, Plaintiff states, "[o]n page 8 when speaking with the inspector [I] told them that [I] drink more alcohol than [I] sell, not that I do not sell alcohol, and at the time of re-certifying [I] was not selling alcohol." Pl.'s Reply at 1. This objection is immaterial to Plaintiff's claim. Although mentioned in the FNS Decision, AR 134, the sale of alcohol was not a basis for the withdrawal of Plaintiff's authorization to participate in the SNAP. Accordingly, whether or not Plaintiff sold alcohol is irrelevant to Plaintiff's likelihood of success on the merits.

The administrative record contains a factual record developed during two site visits to Morgan's Seafood. Based on these visits, FNS determined that Morgan's Seafood did not meet

15

Criterion A or B and was operating as a restaurant in violation of 7 C.F.R. § 278.1. Reviewing the materials in the administrative record *de novo*, the Court does not find clear evidence that Plaintiff meets the necessary requirements. Moreover, at this point in the litigation, Plaintiff has provided nothing outside the administrative record to disturb this conclusion. His present showing fails to satisfy his burden "to prove by a preponderance of the evidence that the violations did not occur." *Kim*, 121 F.3d at 1272. While Plaintiff may ultimately be able to provide additional evidence in support of his claim, at this point in the litigation, he has failed to establish a likelihood of success on the merits.

### B. Irreparable Injury

The Court's conclusion that Plaintiff has failed to show a likelihood of success on the merits is sufficient to deny his motion. *See Sheikh's, Inc.*, 2010 WL 5253531, at *2 ("Even though Plaintiff will suffer irreparable harm absent a stay, the Court cannot grant the stay unless Plaintiff also demonstrates its likely success on the merits."). Nevertheless, Plaintiff's failure to demonstrate an irreparable injury provides an additional reason to deny his request for a stay.

As other courts have held, "[l]osing a substantial percentage of a store's business, especially when coupled with the closing of the store, is enough to constitute irreparable harm." *Id.* at * 2. *See also Phany Poeng*, 167 F.Supp.2d at 1143 ("The majority of district courts addressing this issue have concluded that a loss of at least thirty percent of a plaintiff's business can constitute irreparable harm."). Here, Plaintiff contends that the withdrawal of SNAP authorization "greatly impacts [his] business because this is 67% of [his] sales" and he further alleges that "these actions will put me out of business." Pl.'s Mot. at 1. Yet Plaintiff provides no proof for these statements beyond his bare allegations. To be sure, he states in his reply that "Morgan's can show disparity of sales since the loss of SNAP with bank statements" and also states elsewhere in the reply "Here are copies of bank statements from last year and this years

16

sales." Pl.'s Reply at 1, 2. Yet Plaintiff never actually provides these bank statements, or for that matter, any other documentation of the effect on his business from Defendants' withdrawal of his SNAP authorization. Without any evidence, the Court is unable to find irreparable harm. *See Phany Poeng*, 167 F.Supp.2d at 1143 ("Plaintiff herein has not established, via objective and reasonable documentary evidence, that Plaintiff will necessarily lose fifty percent of his business while barred from the food stamp program."); *Howard v. United States*, No. 3:13-cv-1301, 2013 WL 4046370, at *4 (N.D. Ohio, Aug. 7, 2013) (looking to "financial summary documents provided to the Court" in assessing irreparable harm); *Alkabsh v. United States*, 733 F.Supp.2d 929 (W.D. Tenn. 2010) ("there must be a likelihood that irreparable harm will occur. Speculative injury is not sufficient; there must be more than unfounded fear on the part of the applicant.") (quoting 11A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995)). Plaintiff's conclusory allegations, in the absence of at least some evidence, are insufficient to show irreparable harm, and provide an additional reason to deny his request for an emergency stay.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to a stay pursuant to 7 U.S.C. § 2023(a)(17), as he has not, on the present filings, established a likelihood of success on the merits or made a showing of irreparable injury in the absence of relief. Accordingly, Plaintiff's [2] Motion for an Emergency Stay is DENIED. An appropriate Order accompanies this Memorandum Opinion.

Dated: June 4, 2014

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge