**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROMEO MORGAN,<br><br>       Plaintiff<br><br>    v.<br><br>UNITED STATES,<br><br>       Defendant. | Civil Action No. 14-684 (CKK) |

**MEMORANDUM OPINION**
(October 29, 2014)

Plaintiff Romeo Morgan has filed suit against Defendant United States,[1]

seeking review of the Final Agency Decision of the Food and Nutrition Service ("FNS"), U.S.

Department of Agriculture, sustaining a decision by FNS Retailer Operations to withdraw the

authorization of Morgan's Seafood, owned by Plaintiff, to participate as a retailer in the

Supplemental Nutrition Assistance Program ("SNAP"). Presently before the Court is

Defendant's [22] Motion to Dismiss or, in the Alternative, for Summary Judgment. Upon

consideration of the pleadings,[2] the relevant legal authorities, and the record, the Court GRANTS

---

[1] At various times over the course of this litigation, Plaintiff has also named Jaime Regan, U.S. Department of Agriculture, as a Defendant as well. By its June 4, 2014 Order, ECF No. [16], the Court instructed Plaintiff to re-caption this case to name the United States as Defendant, as required by 7 U.S.C. § 2023(13). Defendant did so in the operative complaint.

[2] Compl., ECF No. [1]; Plaintiff's Motion for Emergency Stay, ECF No. [2] ("Pl.'s Stay Mot."); Administrative Record, ECF No. [8] ("AR"); Defendants' Opposition to Plaintiff's Motion for Emergency Stay of Administrative Action, ECF No. [9] ("Defs.' Stay Opp'n"); Plaintiff's Answer to Defendants' Opposition to Plaintiffs Motion, ECF No. [12] ("Pl.'s Stay Reply"); Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. [22] ("Def.'s Mot."); Plaintiff's Answer to Defendant's Motion to Dismiss, ECF No. [29] ("Pl.'s Opposition"); and Defendant's Reply in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. [32] ("Def.'s Reply").

Defendant's Motion for Summary Judgment and DENIES Defendant's Motion to Dismiss insofar as it seeks to dismiss the action for failure to state a claim. Accordingly, JUDGMENT shall enter for the Defendant and this action shall be DISMISSED in its entirety.

# I. BACKGROUND

## A. Statutory Background

Congress created the food stamp program in 1964 to "permit those households with low incomes to receive a greater share of the Nation's food abundance." The Food Stamp Act of 1964, Pub. L. No. 88-525, § 2, 78 Stat. 703, 703. "Retail stores authorized to participate in the program may accept food stamp benefits instead of cash for designated food items." *Affum v. United States*, 566 F.3d 1150, 1153 (D.C. Cir. 2009) (citing 7 U.S.C. § 2013(a).). "The stores then redeem these benefits with the government for face value." *Id.* In 2008, Congress amended the Food Stamp Act, renaming it the Food and Nutrition Act and renaming the "food stamp program" the "supplemental nutrition assistance program" or "SNAP." *Id.*

A business seeking approval as a "retail food store" under SNAP must comply with the requirements of 7 U.S.C. § 2018. This provision authorizes the Secretary of Agriculture to issue regulations governing the approval and reauthorization of retail food stores to participate in SNAP. 7 U.S.C. § 2018(a)(2). Pursuant to this statutory authority, the Secretary has issued the regulation at issue here, 7 C.F.R. § 278.1. This provision states, in relevant part, that the Food and Nutrition Service of the Department of Agriculture ("FNS"), "shall withdraw the authorization of any firm authorized to participate in the program for any of the following reasons: . . . (iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section . . . ." 7 C.F.R. § 278.1(l)(1).

Criterion A and B are standards governing the variety and quantity of food sold by a particular retailer. In order to meet Criterion A, the store must offer "for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods as defined in § 271.2 of this chapter, including perishable foods in at least two of the categories." *Id.* § 278.1(b)(1)(i)(A). *See also id.* § 278.1(b)(1)(ii) (explaining this definition in greater detail). Criterion B is satisfied if "more than 50 percent of the total gross retail sales of the establishment or route [are] in staple foods." *Id.* § 278.1(b)(1)(i)(A). *See also id.* § 278.1(b)(1)(iii) (explaining this definition in greater detail). As defined by 7 C.F.R. § 271.2, "[s]taple food means those food items intended for home preparation and consumption in each of the following food categories: meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products." *Id.* § 271.2.

Another provision of 7 C.F.R. § 278.1 sets out "ineligible firms" for participation in SNAP, and explicitly qualifies Criterion A and B. This provision states:

> Ineligible firms under this paragraph include, but are not limited to, stores selling only accessory foods, including spices, candy, soft drinks, tea, or coffee; ice cream vendors selling solely ice cream; and specialty doughnut shops or bakeries not selling bread. *In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in hot and/or cold prepared foods not intended for home preparation and consumption, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout.* Such firms may qualify, however, under the special restaurant programs that serve the elderly, disabled, and homeless populations, as set forth in paragraph (d) of this section.

*Id.* § 278.1(b)(1)(iv) (emphasis added).

## B. Factual Background

In March 2008, FNS authorized Morgan's Seafood, an unincorporated business in Washington, D.C., to participate in SNAP. AR 1-13. On June 14, 2013, Plaintiff, as the owner of Morgan's Seafood, completed an FNS-252-R reauthorization application in order to continue his

participation in the program. AR 51. As part of its review of this application and its assessment of the continued eligibility of Morgan's Seafood to participate in SNAP, FNS contract review officials conducted two separate store visits of Morgan's Seafood. AR 14-50, 90-116. These visits occurred on November 7, 2013, and January 3, 2014. The November 7, 2013, review identified as issues "empty coolers" and "broken coolers" and provided the following observations:

1) Owner stated that his display cooler is broken, forcing him to store most of his seafood in the back coolers. The food used for making hot food was mixed [] with the raw (as-is) seafood but the reviewer asked what is what. Prepared salads are also in the back coolers. The beef/meat/sausage in the storage cooler was for cooking only, per owner.

2) The empty tank in photo #693 is of a tank that was full of lobsters that were stolen by burglars, per owner statement.

3) Prices for the deli are not posted. Owner claims that he recently acquired the cooler and deli products but has not created a price list. The menu did not include sandwiches.

4) The prepared cold salads and the yams are also for sale as-is or by themselves, per owner, if customers choose so. However, the cooked yams are on the menu and salads come as sides to hot dishes.

AR 15.

In order to qualify for SNAP, applicants must submit information that would "permit a determination to be made as to whether such applicant qualifies, or continues to qualify, for approval." 7 U.S.C. § 2018. Indeed, following the November 7, 2013, visit, Morgan was sent a letter, dated November 26, 2013, requesting additional information to assist FNS in determining whether Morgan's Seafood was eligible to participate in SNAP. AR 51. Specifically, the letter requested confirmation that the "sales information you provided to the FNS on your Reauthorization application included all the items sold at this location." *Id*. Plaintiff provided his 2011 tax records in response, but did not provide any of the other requested information. *See* AR

117, Notice of Involuntary Withdrawal Reauthorization 2013 for Morgan's Seafood ("Did not submit sales tax documents, licenses/permits, verification of gross sales, other sales or non food sales as requested"). The Court notes that Plaintiff has still not submitted this information. In summarizing the January 3, 2014, visit, the reviewer noted "empty coolers" and "broken coolers" and offered the following comments:

> Store did not have prices posted for meat/cheese. Owner stated that alcohol is not for sale, it's for personal use even though it's posted on the menu so I did not mark alcohol on the survey. Sandwiches are made to order.

AR 91. Both reviewers took a number of photographs of the interior of Morgan's Seafood, which have been included in the administrative record. AR 20-50, 96-116.

A USDA final recommendation form, completed on January 10, 2014, listed several factors justifying the recommended denial of Morgan's Seafood's reauthorization for SNAP:

- With respect to the stock available on day of visit, less than three items were available in following categories: dairy, bread/cereals, fruits/vegetables. *See* AR 117

- "Froze[n] fish items are not displayed for sale or packaged for individual sale. No prices advertise/posted for meat or cold cuts by the pound. Prices that are posted are for take out – hot items, dinner specials, side orders." *Id.*

- Owner failed to provide requested documentation by due date: "Owner submitted requested Federal Tax Return for business & personnel. Did not submit sales tax documents, licenses/permits, verification of gross sales, other sales or non food sales as requested." *Id.*

- "Criteria A: insufficient evidence to support sales of at least three varieties": "The store does not carry an ample variety of Dairy, Fruit/Vegt/Bread/Grain." *Id.* at 117-118. The recommendation also reiterated the comments of the reviewer discussing the

November 7, 2013, visit, reprinted above as well. *See id*. ("Owner stated that his display cooler is broken . . . However the cooked yams are on the menu and salads come as sides to hot dishes."); *see* AR 15.

- "Criteria B: insufficient evidence to support sales of more than 50% staple food": "85% per Reauthorization Form 252R. Store Visit shows business primarily a Take Out business with a number of advertised hot food specialties. More than 95% of business floor space is dedicated to food prep area, hot food serving area, seating area with tables. Tax returns list business name as = MORGAN SEAFOOD BAR & GRILL." AR 117-118.

- The form recited another factor why the facility does not qualify for SNAP: "278.1(b)(1)(ii)(C) Ineligible Firms. Ineligible firms under this paragraph include, but not limited to, stores selling only accessory food, including . . . . specialty doughnut shops and bakeries not selling bread." AR 118.

By letter dated December 10, 2014 – but apparently issued January 10, 2014 – the FNS Retailer Operations Branch informed Plaintiff that the authorization of Morgan's Seafood to participate in SNAP was being withdrawn. AR 119-121. The letter advised Plaintiff that based on the two visits discussed above, FNS had concluded that Plaintiff's business did not meet the eligibility criteria for stores set forth in 7 C.F.R. § 278.1(b)(1). *Id.* The letter stated that "[i]t is the determination of the Food and Nutrition Service that your firm is primarily a Restaurant . . . Your firm does not meet the definition and requirements of a retail food store as set forth in section 271.2 and 278.1(b)(1) of the SNAP regulations because more than 50 percent of your firm's total sales is in hot and/or cold prepared, ready-to-eat foods that are intended for immediate consumption and require no additional preparation." AR 119.

Plaintiff requested an administrative review of the withdrawal action by letter dated January 24, 2014. AR 122. FNS granted this appeal of the Retailer Operations Branch decision, and implementation of the withdrawal of Plaintiff's SNAP authorization was held in abeyance pending completion of the administrative appeal. AR 132. By letter dated February 10, 2014, Plaintiff provided a written response to the withdrawal determination, stating that the FNS visits to his store "do not present a clear picture of my inventory for three reasons." AR 127.

> The first issue that may have been misleading is the fact that at the time of the visits my display case was not up and running. The display case would normally show a wide variety of seafood. It allows for a visual display of the inventory that is available for retail sale.
>
> The second reason is the unique nature of the seafood business. In order to be able to keep my reputation of providing quality fresh seafood[,] I choose not [to] maintain a large inventory of items that may or may not sell or that are extremely perishable such as Crabs, Shrimp, Oysters and Clams. My inventory must be replenished on a daily basis in order for the product to be acceptable to my customers.
>
> A third issue is the fact that my business is seasonal in nature. The bulk of my sales are in the summer. At the time of the visits it was late fall and the start of the holiday season. A large portion of my retail business comes from the sale of fresh crabs. Not only are they extremely perishable but they are difficult to obtain during the winter. There are times when due to availability I have no inventory of crabs. Even when crabs are available the prices are so high, due to limited supply, that I am unable to make a profit on them.
>
> An additional point for you to consider when evaluating my application is the fact that for many years Morgans Seafood has participated, without issue, in the food stamp program the store has provided its customers with quality, healthy nutritionally beneficial food choices in the inner city. If you were to deny Morgans Seafood from participating in the SNAP program my customers will have an additional financial burden of finding transporta[t]ion to other seafood retail outlets.

*Id.* On March 6, 2014, an FNS Administrative Review Officer issued a Final Agency Decision concluding that there was "sufficient evidence to support a finding that the Retailer Operations Division . . . properly imposed the withdrawal of the authorization of Morgan's Seafood . . . to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP)." AR 131.

After summarizing Plaintiff's objections as stated in his February 10, 2014 letter, the Final

Agency Decision included the following analysis of Plaintiff's appeal and the record compiled

by FNS:

> The FNS onsite visit revealed that the establishment presents itself to the public as a restaurant serving hot and cold prepared ready-to-eat foods intended for immediate consumption or takeout requiring no additional preparation. There is a prominent menu board for prepared items, and store signage advertises prepared food items such as soul food, smoked ribs, beef and pork, and seafood meals. The limited food inventory onsite is located behind service counters and in the kitchen area. These foods appear to be used for the preparation of ready-to-eat meals as posted and custom made sandwiches. The restaurant has a countertop for food orders, and customer waiting for prepared orders. There are stools, table tops, and a counter area for eating in. The firm has signage for beer, and alcohol is visible in the photographs. There is a deli case with cheese and luncheon meat, and some prepared pies and cakes in single serve containers. The kitchen and food preparations area and equipment take up most of the space and are representative that this is a restaurant rather than a retail food store. The inventory indicated that there were no prices posted for meat/cheese and that sandwiches are made to order. A Food Establishment Inspection Report by the District of Columbia Department of Health submitted by the retailer indicated that the firm was out of compliance with a number of rating criteria. The tax returns list the business name as Morgan's Seafood and Bar and Grill and the business is described as food and drink service.

> The January 3, 2014 inventory conducted by the FNS representative indicated that the business lacked sufficient staple foods and did not meet Criteria A. Retailer Operations determined that Appellant was ineligible for authorization under Criterion B per 7 CFR § 278.1(b)(1)(iii) since staple food sales must comprise more than 50 percent of a firm's annual gross retail sales. More importantly, Retailer Operations determined that not only does this business not meet Criteria A or B for authorization as a retail food store, it does not meet the very definition of a retail food store as set forth in sections 7 CFR § 271.2 and § 278.1(b)(1) cited herein. Retailer Operations determined that the business had more than 50 percent of its total gross retail sales in hot and/or cold prepared, ready-to-eat foods that are intended for immediate consumption onsite or for carry-out, and require no additional preparation, and by definition is not eligible for SNAP participation as retail food store.

AR 134. Based on this determination, the Administrative Review Officer informed Plaintiff

through the Final Agency Decision that the decision to withdraw authorization for Morgan's

Seafood to participate as a retailer in SNAP was sustained. AR 135. Consistent with 7 C.F.R.

§ 278.1(k)(2), the Final Agency Decision noted that Plaintiff was ineligible to reapply for participation in SNAP for a minimum period of six months from the effective date of withdrawal. AR 135.

Through the Final Agency Decision, the Administrative Review Officer further informed Plaintiff of the provisions governing judicial review of the denial of his appeal, 7 U.S.C. § 2023 and 7 C.F.R. § 279.7. *Id.*("[I]f a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner(s) reside or are engaged in business . . . If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision."). Shipping records included in the administrative record indicate that Plaintiff received the Final Agency Decision on March 10, 2014. AR 136.

### C. Procedural Background

Plaintiff filed suit in this Court on April 23, 2014, arguing that "Defendant improperly denied Plaintiff an authorization to participate in the Department of Agriculture's SNAP program [sic] and its decision was arbitrary and improper" as "Plaintiff complied with 7 CFR 278.1(b)(1)(iii) and other CFR provisions." Compl. ¶¶ 6-7. The following day, he filed a Motion for an Emergency Stay, stating that if he remained unable to participate in SNAP, Morgan's Seafood would be forced out of business. *See* Pl.'s Motion for Emergency Stay, ECF No. [2], at 1. Defendants filed the administrative record and the accompanying Declaration of Completeness on May 7, 2014. By a [16] Order and [17] Memorandum Opinion dated June 4, 2014, the Court denied Plaintiff's Motion, finding that Plaintiff was unlikely to succeed on the merits of his claim and has not made a sufficient showing of irreparable harm in the absence of a stay. On July 2, 2014, Plaintiff filed an [21] Amended Complaint, as required by the Court by a previous

[20] Order. Defendant filed the motion presently before the Court on July 18, 2014. Plaintiff subsequently filed a one-page response, attaching receipts for seafood purchased and bank statements showing purchases of a variety of goods. He submitted no other additional documentation. Defendant in turn filed a reply. Accordingly, the motion is now ripe for review.

## II. LEGAL STANDARD

### A.  Motion to Dismiss Standard

Defendant moves to dismiss this action on the grounds that Plaintiff has failed to state a claim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

### B. Summary Judgment Standard

In the alternative, Defendant moves for summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty*

*Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

### A. Motion to Dismiss

Defendant first argues that Plaintiff's Amended Complaint should be dismissed because it fails to state a claim upon which relief may be granted. The Defendant's cursory argument fails as it focuses primarily on the evidence that has been submitted rather than on the extent to which Plaintiff has stated a claim. A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). While there is no doubt that Plaintiff's complaint is far from the handiwork of a lawyer, it "still meet[s] the notice requirements of Rule 8(a) of the Federal Rules of Civil Procedure and give[s] the defendant 'fair notice of the plaintiff's claim and the grounds upon which it rests.' " *Richards v. Duke Univ.*, 480 F.Supp.2d 222, 235 (D.D.C. 2007). There is no doubt what this action is about: Plaintiff argued before the agency that his facility was wrongly disqualified from participation in SNAP and argues here that his "business sufficiently

meets all applicable agency regulations and that agency improperly and arbitrarily withdr[e]w Plaintiff's authorization." Am. Compl. ¶ 5. In any event, the Court need not dwell on Defendant's argument since the evidence submitted, as discussed below, requires that the Court grant summary judgment to Defendant.[3]

## B. Motion for Summary Judgment

In the alternative, Defendant moves for summary judgment arguing that Plaintiff has not met his burden of showing that the agency's action was invalid by a preponderance of the evidence as necessary in order for him to prevail. There are no genuine disputes of material fact, and the Court concludes that Plaintiff has not carried the burden assigned to him by statute.

### 1. Legal Framework

Pursuant to 7 U.S.C. § 2023(a)(15), "[t]he suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue . . . ." "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." *Id.* § 2023(a)(16).

---

[3] In addition to seeking the reversal of the disqualification of his business, Plaintiff seeks money damages for his loss of income, but does not cite any legal authority for such damages. Am. Compl. ¶ 8. Because the Court concludes that Plaintiff's claim fails under summary judgment, the Court need not reach the issue of whether Plaintiff's claim fails to state a claim with respect to the *monetary damages* that he seeks. Nonetheless, Defendant appears to be correct that the agency is not liable for monetary damages. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Not only has Congress failed to waive sovereign immunity in this circumstance, it has specifically barred monetary damages to compensate for sales lost in circumstances such as the one that the Plaintiff faces. *See* 7 U.S.C. § 2023(a)(18)(a) ("If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.")

" 'A trial de novo is a trial which is not limited to the administrative record – the plaintiff 'may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.' " *Affum*, 566 F.3d at 1160 (quoting *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997)). "The trial *de novo* provision of the Act 'is clearly broader than the review standard provided for under the Administrative Procedure Act. It requires the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence.' " *Id.* (quoting *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). "[T]he statutory requirement of a trial de novo 'is compatible with a summary judgment disposition if there are no material facts in dispute.' " *Id.* (citation omitted). In undertaking this inquiry, the burden of proof is "placed upon the store owner to prove by a preponderance of the evidence that the violations did not occur." *Kim*, 121 F.3d at 1272. *Accord Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010); *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991); *Redmond v. United States*, 507 F.2d 1007, 1011-12 (5th Cir. 1975).

In contrast to the standard of review for the underlying violation, "judicial review of the agency's choice of penalty is focused on whether the Secretary has abused his discretion." *Affum*, 566 F.3d at 1162. *See also id.* at 1160-61 ("considering the statutory scheme as a whole, we think that Congress meant to impose different standards of review for a judicial action challenging the agency's finding of a violation as opposed to a judicial action challenging the Secretary's choice of penalty."); *Lawrence v. United States*, 693 F.2d 274, 276 (2d Cir. 1982) (where plaintiff conceded the fact of the violations, "[t]he sole issue before the District Court . . . was whether the FNS imposition of a one-year suspension as a penalty was arbitrary and capricious"). "Under the applicable standard of review, the Secretary abuses his discretion in his

choice of penalty if his decision is either 'unwarranted in law' or 'without justification in fact,' or is 'arbitrary' or 'capricious.' " *Affum*, 556 F.3d at 1161 (internal citations omitted). Although Plaintiff does not clearly dispute the choice of penalty, the Court addresses it below in the interest of completeness.

### 2. *Finding of underlying violation*

Plaintiff seeks reversal of the agency's decision, arguing that "his business sufficiently meets all applicable agency regulations." Am. Compl. ¶ 5. Because Plaintiff is challenging the existence of a violation here, the Court reviews the FNS conclusion that Plaintiff is not eligible for SNAP *de novo*. As noted, Plaintiff is not limited to relying on the administrative record in pursuing his claim. Prior to the summary judgment briefing, Plaintiff had not provided the Court with any materials outside the administrative record in support of his claim and had relied on arguments with respect to evidence in the Administrative Record. *See* Pl.'s Stay Reply at 1-2. In his opposition to Defendant's motion for summary judgment, Plaintiff submitted bank statements covering a period from January 2012 through June 2014, and selected receipts for purchases of fish from June, July, and August 2014.[4] The Court reviews these sources of evidence in turn.

The Administrative Record includes evidence resulting from two visits to the facility by review officials, on November 7, 2013, and January 3, 2014. The facility appears to be used primarily for preparation of food for carryout and to eat in the store. The facility includes a menu, above the counter, that describes various prepared items that can be purchased. *See* AR

---

[4] Plaintiff also submitted a single receipt for the purchase of soft drinks and alcohol from July 2014. *See* Pl.'s Opp'n, Ex. at 53. Because the owner claimed that the alcohol is not for sale, *see* Pl.'s Stay Reply at 1, this receipt does not aid Plaintiff in his attempt to portray the facility as one selling groceries. If anything, the inclusion of this receipt suggests that Plaintiff was selling alcohol – as indicated by the menu in the store – and was operating the facility primarily as a restaurant.

102. The categories on the menu include soul food, sides, seafood, crabs, and dinners. *See id*. Many of the items on the menu are prepared items, such as baked chicken, pigs feet, rib sandwiches, frog legs, fried okra, fried mussels, coleslaw, and steamed shrimp. *See id*. With respect to the "dinners" category, no inference can be drawn other than understanding this as a reference to prepared foods—available for consumption at the facility or at home. While some of the foods *may* be available for purchase for home consumption, such as the crabs, scallops, and oysters listed, *see id*., this does not undermine the conclusion that this facility focused on the sale of prepared food. Similarly the listing of "combinations" of seafood available suggests multiple types of seafood to eat as a single, prepared meal—not a discount if the customer purchasers two types of seafood for home preparation. *See* AR 100. The foods that the facility presents itself as serving show that it is disqualified from SNAP participation by virtue of qualifying as a restaurant. *See* 7 C.F.R. §278.1(b)(1)(iv) ("In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in hot and/or cold prepared foods not intended for home preparation and consumption, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sells prepared foods that are consumed on the premises or sold for carryout.") Numerous additional photographs confirm this assessment of the facility. *See* AR 22-35, 36-49, 96-102, 103-116.

The two sketches of the layout of the facility also indicate a facility design focused on the sale of prepared foods. *See* AR 19, 95. Both sketches reveal areas for sitting inside the facility. *See id*. Both sketches also show areas devoted to hot food, prepared food, and sandwiches, in addition to areas of fresh fish, fresh vegetables, and frozen fish. *See id*. While the owner indicated to the inspectors that meat and cheese were available for purchase by the pound, in

addition to the use of these ingredient in store-prepared sandwiches, no prices were posted for by-the-pound purchase during either inspection. *See* AR 15, 91. Nor is there any indication from the photographs that the meat and cheese is available for purchase in that format. *See, e.g.*, AR 97. Certainly, Plaintiff is not required to price his foods, as he argues. *See* Pl.'s Opp'n at 1. But the absence of prices, particularly given the existence of posted prices for many store-prepared foods, does not assist Plaintiff in bearing *his burden* with respect to the proportions of store-prepared food and food for home preparation. Moreover, a significant amount of the space in the facility is given over to food preparation and equipment. *See* AR 15, 95, 118. Altogether the design of the store provides a very strong indication that the facility qualifies as a "firm[] that primarily sell prepared foods that are consumed on the premises or sold for carryout." 7 C.F.R. §278.1(b)(1)(iv). Plaintiffs arguments do not demonstrate the contrary.

In Plaintiff's [29] Answer to Defendant's Motion to Dismiss, Plaintiff provides six explanations why the data supports his claim. The Court reviews these explanations, as well as the data supporting them, in turn, and ultimately finds them unpersuasive.

*First*, Plaintiff states, "here are some receipts showing that my sales are mostly fresh sea food and grocery. Look at the price of the crabs, shrimp, crab legs, etc. As I explained 67% of my sales are fresh seafood." Pl.'s Opp'n at 1. Plaintiff attaches approximately fourteen receipts showing the purchase of seafood. Plaintiff also attaches bank records showing check card purchases for numerous items, including some grocery and seafood purveyors. *See, e.g.*, Attachment to Pl.'s Opp'n at 60 ("Crabs Express Inc," "Safeway"). In the first instance, it is not clear that these purchases are solely for Morgan's Seafood – the name on the account is Romi Rome Productions LLC. Moreover, no amount of evidence with respect to the facility's *inputs* can show that the facility's *outputs* were foods for home preparation rather than ready-to-eat

store-prepared foods. *Cf.* 7 C.F.R. §278.1(b)(1)(iv) (contrasting "hot and/or cold prepared foods" with foods intended for "home preparation and consumption.") In other words, even if it is true that Morgan's spends a significant amount of money in purchasing raw seafood that does not demonstrate that the facility sells groceries for home preparation. Indeed, even if he operated the facility as a seafood restaurant, that would require significant purchases of seafood to feed the customers, whether they dined in or dined out.

*Second*, Plaintiff states that "if you go to the waterfront they buy the crabs and shrimp and crabs legs, clams, oysters live and do the same as I do, cook them for free, what makes them different from me?" Pl.'s Opp'n at 1. Plaintiff appears to be suggesting that he is receiving disparate treatment from other food establishments. However, he does not even claim, let alone provide any evidence demonstrating, that those establishments are participants in SNAP. Even if his claim were true, alone it would provide him no assistance in the attempt to show that his facility is SNAP eligible.

*Third*, Plaintiff states, "here are my bank statements that show the difference of sales when I was excepting [sic] SNAP now and past." Pl.'s Opp'n at 1. But changes to his income, even if traceable to his SNAP disqualification, do not even suggest that he is eligible for SNAP. Given that he was required to cease accepting SNAP, it is unsurprising that his facility's income would decline—regardless of whether he was actually qualified for SNAP when he participated in it in the past.

*Fourth*, Plaintiff states, "if the cooler was broken, how is that that the crabs were still alive and the other seafood was still fresh?" Pl.'s Opp'n at 1. He references the inspector's indication that Plaintiff's seafood cooler was broken. AR 15. In reference to this question, Plaintiff had previously explained that the seafood was, therefore, stored, in a cooler in the back

of the facility. Accepting this explanation, the location in the store the food is stored is of no moment; the lack of functionality of this cooler does not disturb the overall evidence that the facility sold more store-prepared food than food for home preparation—evidence rooted in the store's design, displays, and presence of food that was evidently for sale, as described above.

*Fifth*, Plaintiff states, "I don't have to price my food." Pl.'s Opp'n at 1. While it may be correct that Plaintiff is not required to price his foods in order to sell them or to participate in SNAP, the pricing of some foods but not others is probative evidence that the Court can consider in assessing the activities of the facility. It is important that many prepared foods *were* priced, *see, e.g.*, AR 102, while non-prepared foods that he claimed to sell, such as the meat and cheese, without any other evidence, were not priced, *see, e.g.*, AR 97. At a minimum, the absence of pricing on these foods that could *either* be sold for home preparation *or* could serve as ingredients in store-prepared foods, does not contribute to the requirement that Plaintiff show, by a preponderance of the evidence, that no more than 50 percent of the facility's sales were in prepared foods. *See* 7 C.F.R. § 278.1(b)(1)(iv).

*Sixth*, and finally, Plaintiff states that, "the tank was empty because of a burglary which cause me to empty lobster tank which was contaminated." Pl.'s Opp'n at 1. As with his argument regarding the broken cooler, this argument fails. The lack of functionality of this piece of equipment does not negate the overall evidence that the facility sold more store-prepared food than food for home preparation, disqualifying the facility from SNAP participation because of its restaurant status. *See* 7 C.F.R. § 278.1.

None of these six arguments are persuasive. They do not show that the facility meets Criteria A or B, as the facility must to qualify for SNAP, and do not show that Morgan's is not disqualified by virtue of being a "restaurant" pursuant to 7 C.F.R. § 278.1. The statute requires

Plaintiff, as an applicant for participation in SNAP, to submit information that shows the eligibility of his facility. *See* 7 U.S.C. § 2018. In response to FNS's request for information that would demonstrate his eligibility, he did not provide the requisite information. *See* AR 51, 117-118. Nor has he provided adequately responsive information during the course of this litigation. *See* Pl.'s Opp'n & Ex. Thus Plaintiff's case has the same infirmity that it had before the agency: he has not provided evidence demonstrating the eligibility of his facility for SNAP by providing evidence that would support his claim that he sells more food for home preparation than food that has been prepared at his business.

In Plaintiff's previous briefing with respect to Plaintiff's Emergency Motion to Stay, specifically in his [12] Answer to Defendant's Opposition to Plaintiff's Motion, Plaintiff relied on the materials in the administrative record to show that the FNS has wrongfully concluded that Morgan's Seafood is ineligible for participation in SNAP pursuant to 7 C.F.R. § 278.1(b)(1). Although Plaintiff does not renew these arguments in his [29] Answer to Defendant's Motion to Dismiss, the Court reviews them here and concludes, as it did with respect to the Emergency Motion to Stay, that Plaintiff's arguments with respect to this evidence are unpersuasive.

Plaintiff relied primarily on a series of photographs of the interior of Morgan's Seafood which are contained in the administrative record. These photographs, apparently taken by the two FNS reviewers who visited Morgan's Seafood on November 7, 2013 and January 3, 2014, respectively, show a series of food products contained in Plaintiff's store. AR 20-50, 96-116. Plaintiff pointed to these pictures as evidence that Morgan's Seafood is operating as a "retail establishment" selling fresh seafood, and not as a restaurant. *See* Pl.'s Stay Reply at 2 ("If Mr. Morgan is not operating as a retail establishment what are pictures A.R. 21, A.R. 22, A.R. 23, A.R. 24, A.R. 25, A.R. 26, A.R. 28, A.R. 29, A.R. 31, A.R. 33, A.R. 34, A.R. 36, A.R. 37, A.R.

38, A.R. 39, A.R. 40, A.R. 41, A.R. 42, A.R. 43, A.R. 44, A.R. 45, A.R. 48, A.R. 49, Clearly

shows retail items."); *id.* ("Morgan has clearly shown according to their pictures which are listed

in #5 which shows unprepared foods in his establishment").

Yet these photographs do not provide the clear evidence necessary for Plaintiff to

succeed with his claim. Importantly, Plaintiff did not clarify which of these photographs show

items for direct sale to consumers and which, by contrast, show items used in the preparation of

meals for carryout. For example, three of the photographs cited by Plaintiff, AR 22, AR 32, and

AR 39, show the menu board for Morgan's Seafood. Other photographs in the administrative

record also show this menu board from various angles. *See* AR 98, 100, 102, 105, 106, 107, 113,

115, 116. This menu, as noted by the Final Agency Decision, lists a series of carryout options in

the categories Soul Food, Sides, Dinners, and Combinations. The menu options in these

categories include, among many others, "baked chicken," "rib sandwich," "pork chop," "fried

mussels," and "fried okra." AR 113; *see also* AR 134 ("[T]he establishment presents itself to the

public as a restaurant serving hot and cold prepared ready-to-eat foods intended for immediate

consumption or takeout requiring no additional preparation. There is a prominent menu board for

prepared items, and store signage advertises food items such as soul food, smoked ribs, beef and

pork, and seafood meals."). The photographs show other indicia of a carryout business, such as

condiments and packaging for take-out meals. AR 105. Although the photographs cited by

Plaintiff show a series of food products – including bread, cheese, vegetables, and various

seafood – he provides no evidence to show that these are anything but ingredients and inventory

used in preparing the meals for customers listed on the menu board. The Court is willing to

accept that some of the food items in these photos may be for sale directly to consumers without

preparation. Indeed, AR 36 shows several boxes of cereal stacked atop a cooler, apparently for

sale to consumers. Moreover, there appears to be no dispute that at least *some* of Plaintiff's business comes from the direct sale of fresh seafood. However, Plaintiff failed to define the scope of his sale of staple foods in comparison to his sale of prepared foods. In light of the menu board and other indicia that Morgan's Seafood operates at least in part as a restaurant, Plaintiff's blanket statement that *all* of the photographs show "retail items" is simply unsupported. These photographs do not provide sufficient evidence that Plaintiff complies with Criteria A or B, or that Plaintiff is not a "restaurant" within the meaning of 7 C.F.R. § 278.1(b)(1)(iv). Without further evidence, they do not show that (a) Plaintiff offers *for sale* foods in each of four categories of staple food, including perishable foods in at least two of the categories, or (b) more than 50 percent of Plaintiff's total gross retail sales are in staple foods. *See* 7 C.F.R. § 278.1(b)(1)(i)(A). Furthermore, they do not undermine the conclusion that more than 50 percent of Plaintiff's total gross retail sales are in hot and/or cold prepared foods not intended for home preparation and consumption, rendering him an ineligible restaurant under 7 C.F.R. § 278.1(b)(1)(iv). These photos are insufficient to refute FNS's conclusions as to the nature of his business.

Plaintiff's other previous related arguments fail for similar reasons. Plaintiff pointed to the FNS' reviewers' photographs of his coolers. Because these coolers (which the Court notes are partially empty) appear to contain seafood, Plaintiff contends that he has established his seafood inventory. *See* Pl.'s Stay Reply at 1 ("According to pages A.R. 21, A.R. 24, A.R. 28, A.R. 41, A.R. 43, and A.R. 45, clearly shows refrigeration in working order on all fresh seafood inside are very perishable and would have spoiled, and if the coolers were empty it clearly shows inventory."). Yet, again, the Court has no proof from Plaintiff that these materials, along with the other food products shown in these photographs, were for direct sale to customers, and not

simply ingredients used in preparing food for carryout. The Court is thus left guessing as to what percentage of Plaintiff's business comes from sale of staple foods and what percentage comes from sale of carryout meals or meals consumed on the premises. In addition, to the extent Plaintiff argued that the empty coolers are indicative of his inventory (apparently because he has sold whatever was in the coolers), he goes too far. The Court is unpersuaded that an empty cooler indicates that Plaintiff has sold out whatever supply of fresh seafood he offered for direct sale to customers on a particular day. The array of receipts and bank statements that Plaintiff provides over the course of a long time period do not provide the information necessary to show that the coolers were empty because of this particular malfunction of the cooler.

Plaintiff also argued that the FNS reviewers' depiction of his store's layout, contained at AR 19, "clearly does not show any hot food steam table with food ready to be served." Pl.'s Stay Reply at 1; *see also id.* at 2 ("nor does their drawing show on page A.R. 19 of equipment showing consistent hot foods."). The Court remains somewhat unclear as to this objection, but notes that the reviewer's sketch of the layout of Morgan's Seafood at AR 19 does say "hot food" in its description of the area behind several coolers in Plaintiff's store. Photographs displaying this area show what appears to be a grill or stove, although not clearly. AR 32, 105. In addition, Plaintiff's 2011 tax return lists business expenses associated with "stoves." AR 56. In any case, if Plaintiff were arguing that he does not actually prepare hot food, as he lacks equipment consistent with preparation of hot food, that argument goes nowhere. First, the menu board depicted in various photographs would appear to directly contradict Plaintiff's claim, as it offers for sale various items that are typically of the hot food prepared variety, such as "baked chicken," "rib sandwich," "pork chop," "fried mussels," and "fried okra." Second, the definition of "restaurant" in 7 C.F.R. § 278.1 is not limited to firms selling hot prepared foods. *See* 7 C.F.R.

§ 278.1(b)(1)(iv) ("firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross retail sales in hot *and/or cold prepared foods* not intended for home preparation and consumption, shall not qualify for participation as retail food stores under Criterion A or B.") (emphasis added).

Plaintiff's remaining arguments are equally unpersuasive in showing that he meets Criteria A or B or that he is not a "restaurant" pursuant to 7 C.F.R. § 278.1. First, Plaintiff pointed to a photograph of the exterior of his store, and notes that the signage for the business reads "Morgan's Seafood" and *not* "Morgan's Seafood Restaurant." Pl.'s Stay Reply at 1 (citing AR 20). Yet the mere fact that Plaintiff does not explicitly call his firm a restaurant is not conclusive for purposes of applying the restaurant definition in 7 C.F.R. § 278.1(b)(1)(iv). Moreover, it bears noting, that in his tax returns, Plaintiff *has* held out his business as a restaurant, listing his business name as "Morgan Seafood Bar and Grill." AR 55. Second, as an additional argument for the stay, Plaintiff states, "[o]n page 8 when speaking with the inspector [I] told them that [I] drink more alcohol than [I] sell, not that I do not sell alcohol, and at the time of re-certifying [I] was not selling alcohol." Pl.'s Stay Reply at 1. This objection is immaterial to Plaintiff's claim. Although mentioned in the Final Agency Decision, AR 134, the sale of alcohol was not a basis for the withdrawal of Plaintiff's authorization to participate in SNAP. Accordingly, whether or not Plaintiff sold alcohol is irrelevant to the Court's review of the agency's decision.

In sum, the administrative record contains a factual record developed during two site visits to Morgan's Seafood. Based on these visits, FNS determined that Morgan's Seafood did not meet Criteria A or B and was operating as a restaurant in violation of 7 C.F.R. § 278.1. Reviewing the materials in the administrative record *de novo*, as well as the additional materials

that Plaintiff has submitted, the Court concludes that Plaintiff has not satisfied his burden of "prov[ing] by a preponderance of the evidence that the violations did not occur." *Kim*, 121 F.3d at 1272.

### 3. Choice of penalty

Plaintiff does not clearly take issue with Defendants' choice of penalty, *see* Am. Compl.; Pl.'s Opp'n, but the Court briefly addresses the penalty in the interest of completeness. As explained above, any review of the choice of penalty is only for abuse of discretion. *See Affum*, 566 F.3d at 1162. To the extent Plaintiff also challenges the choice of his penalty here – withdrawal of eligibility and a six-month bar on reapplication – these penalties are set out in the applicable regulations. *See* 7 C.F.R. § 278.1(l)(1) ("FNS *shall withdraw* the authorization of any firm authorized to participate in the program . . . [if] (iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section") (emphasis added); *id.* at 278.1(k)(2) ("Any firm that has been denied authorization on these bases *shall not* be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.") (emphasis added). "Under the applicable standard of review, the Secretary abuses his discretion in his choice of penalty if his decision is either 'unwarranted in law' or 'without justification in fact,' or is 'arbitrary' or 'capricious.' " *Affum*, 556 F.3d at 1161 (internal citations omitted). Accordingly, the application of these mandatory penalties here does not constitute an abuse of discretion by the Secretary.

Because the effective date of withdrawal was held in abeyance pending the resolution of Plaintiff's administrative appeal, AR 132, the Court understands the six-month period during which Plaintiff was barred from reapplying to have from March 6, 2014, until September 6, 2014. In other words, Plaintiff may now reapply if he has not done so already.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that there are no genuine issues of material fact in this dispute. The Court further concludes that the Plaintiff has not, as required in order to prevail, established by the preponderance of the evidence, that Defendant's withdrawal of the authorization of Morgan's Seafood, owned by Plaintiff, to participate as a retailer in the Supplemental Nutrition Assistance Program was improper. Accordingly, the Court GRANTS SUMMARY JUDGMENT to the Defendant. The Court GRANTS Defendant's Motion insofar as it seeks summary judgment and DENIES Defendant's motion insofar as it seeks to dismiss this action for failure to state a claim. JUDGMENT shall enter for the Defendant, and this action is DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: October 29, 2014

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge